IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cr-209 |
| | ) | Hon. Anthony J. Trenga |
| PETER ANDREW STINSON, | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO THE GOVERNMENT'S OMNIBUS MOTION IN LIMINE TO PRECLUDE IMPROPER DEFENSE ARGUMENTS AND EVIDENCE

This case sits at the intersection of First Amendment protection and criminal liability, requiring careful consideration of the distinction between protected advocacy of violence and criminal solicitation. The government's omnibus motion seeks to exclude evidence and argument central to this distinction — evidence that the jury needs to differentiate between Mr. Stinson's public social media posting and the type of serious criminal proposals prohibited by 18 U.S.C. § 373.

Furthermore, the Court should deny the government's motion as premature on the ground that it seeks anticipatory rulings on hypothetical issues better addressed in the factual context of trial through appropriate jury instructions and limiting instructions where necessary. *See* 21 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 5037.10 (2d ed. 2022) (discouraging parties from filing omnibus motions in limine seeking anticipatory rulings as to large numbers of hypothetical issues that may never arise at trial).

## I. The Court Should Instruct the Jury Regarding the First Amendment's Protection of Advocacy of Violence.

The government first asks the Court to bar the defense from "eliciting evidence or arguing to the jury that the defendant's statements were protected by the First Amendment." Gov't Mot. (ECF 60) at 4. The basis for its motion, however, assumes the very fact the jury must decide (if the Court denies Mr. Stinson's Motion to Dismiss): whether Mr. Stinson's post on the social media site BlueSky constitutes criminal solicitation or protected advocacy. Specifically, the government argues in a circle that because "*solicitations* are not protected [by the First Amendment] as a matter of law[,]" the Court should bar the defense "from arguing to the jury that *his solicitations* to others to harm the President of the United States constitute or should constitute free speech protected under the First Amendment." Gov't Mot. (ECF 60) at 4-5 (emphasis added). In addition, the relief the government seeks is not supported by the principal case it cites, *United States v. White*, 610 F.3d 956 (7th Cir. 2010).

An expression advocating violence, without more, is protected by the First Amendment and not subject to prohibition as a criminal solicitation unless it constitutes incitement. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."); *accord United States v. Miselis*, 972 F.3d 518, 533

(4th Cir. 2020). The Court thus should determine as a matter of law that Mr. Stinson's public posting on a social media site, "Take the shot. We'll deal with the fallout," does not constitute a "solicitation" in violation of 18 U.S.C. § 373. *See* Motion to Dismiss the Superseding Indictment (ECF 61)*; see also United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) ("If there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law.").

But if the Court denies that Motion, the question of whether Mr. Stinson's post constitutes protected speech or a criminal solicitation will have to be decided by a jury. The defense maintains that Mr. Stinson's post constitutes mere advocacy protected by the First Amendment, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982), and does not meet the factual prerequisites to constitute a "solicitation" in violation of § 373. A "solicitation" in violation of § 373 constitutes a specific proposal to hire or partner with another person or direction to a subordinate to commit a specific crime of violence, or instigation of a violent act sufficient to constitute incitement. Def. Mot. (ECF 61) at 8-13.

To differentiate between a criminal "solicitation" in violation of § 373 and First Amendment protected advocacy of violence, the jury will have to understand the legal distinction between First Amendment protected advocacy and criminal solicitation. As such, a jury instruction defining the First Amendment's protection of

3

mere advocacy of violence will be necessary, and argument to the jury based on the Court's instruction would be warranted.

Specifically, the jury would have to decide whether Mr. Stinson's post constitutes "mere advocacy of the use of force or violence," and thus remains within "the protection of the First Amendment." *Claiborne Hardware Co.*, 458 U.S. at 927; *see also Brandenburg*, 395 U.S. at 447 (protecting advocacy of violence unless "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action"). Alternatively, it must decide whether Mr. Stinson's post constituted a specific and serious proposal to partner or hire another or direct a subordinate or follower to assassinate President Trump, such that his speech violated § 373 and was not protected by the First Amendment. *See United States v. Williams*, 553 U.S. 285, 298-99 (2008); *United States v. Hansen*, 599 U.S. 762, 782-83 (2023).

In deciding whether Mr. Stinson's post crossed the line from protected advocacy of violent action to criminal solicitation, Mr. Stinson would be entitled to a jury instruction on his theory of defense. *See Matthews v. United States*, 485 U.S. 58, 63 (1988) ("[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). An instruction on the First Amendment is warranted when the charged conduct may constitute mere advocacy. *See Counterman v. Colorado*, 600 U.S. 66, 76 (2023) ("'[M]ere advocacy' of illegal acts [is] a kind of

4

speech falling within the First Amendment's core"); *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985) (Kennedy, J., for maj. op.) (holding "the trial court erred by instructing the jury that the First Amendment was irrelevant" where defendant's speech could be construed as criticizing "tax laws generally" and not "intended and likely to produce an imminent criminal act").

Accordingly, as the Seventh Circuit acknowledged in *White* — the principal citation in the government's motion to preclude the defense from arguing a First Amendment defense at trial, Gov't Mot. (ECF 60) at 4-5 — "the First Amendment may still have a role to play at trial. Based on the full factual record, the court may decide to instruct the jury on the distinction between solicitation and advocacy, and the legal requirements imposed by the First Amendment." *White*, 610 F.3d at 962.

In this case, the government's allegations are based entirely on Mr. Stinson's general online statements expressing vehement opposition to President Trump. No evidence exists that Mr. Stinson provided any helpful information or sought to obtain the means to assist someone to actually assassinate the President. In fact, the government even seeks to introduce at trial statements made by Mr. Stinson as far back as 2020 during the first Trump administration. Gov't Mot. in Limine (ECF 59).

Such casual online comments posted on popular social media platforms are not "likely to produce an imminent criminal act." *Freeman*, 761 F.2d at 552. Indeed no evidence in this case indicates that anyone paid attention to Mr. Stinson's online

5

posts until his name was submitted in connection with an application for a peaceful protest to the U.S. Park Police. Consequently, "[i]n light of [Mr. Stinson's] defense and the evidence [he may present] to support it, an instruction based on the First Amendment] [likely] should [be] given to the jury." *Id.* at 551-52 (vacating convictions due to the failure to instruct on First Amendment defense).

In sum, the premise of the government's motion – that the defense will seek to make "[c]onstitutional arguments that [] solicitations [are] forms of protected free speech," Gov't Mot. (ECF 60) at 6 – wrongly assumes that Mr. Stinson's speech constituted a criminal "solicitation." The defense intends to argue – based on a jury instruction defining the First Amendment's protection of mere advocacy of violence – that his post constitutes protected speech, not a criminal "solicitation" in violation of § 373.

**II. The Lack of an Identified Solicitee Is Relevant and Material to Whether Mr. Stinson's Public Post Occurred "Under Circumstances Strongly Corroborative of [the] Intent" that Another Person Assassinate President Trump and to the First Amendment Defense.**

The government's second argument is that because it is *possible* to violate § 373 "by posting [] criminal solicitations online to a wide audience, and not having spoken to any individual about the solicited crime one-on-one[,]" it is "*irrelevant* to the charge at issue" whether the defendant "solicit[ed] or endeavor[ed] to persuade a specific, identifiable individual [] to harm the President[.]" Gov't Mot. (ECF 60) at 6-8 (emphasis added). The government therefore asks the Court to "preclude the

defendant from eliciting evidence or arguing to the jury that the defendant did not violate § 373 because the defendant never solicited a specific or identifiable individual." *Id.* at 6. This argument is unfounded and, once again, contrary to the government's principal citation, *United States v. White*, 610 F.3d 956 (7th Cir. 2010).

The bar for relevance is low and encompasses evidence that "has any tendency to make a [material] fact more or less probable." Fed. R. Evid. 401. Conversely, the bar for a motion in limine seeking to exclude evidence on relevance grounds is high, and "should be granted only when the evidence is clearly inadmissible on all potential grounds." *United States v. Verges*, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014) (Cacheris, J.). Unless the movant meets this high standard, any preliminary ruling would be "wholly speculative," "subject to change when the case unfolds," and "would be a matter of conjecture." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

### A. The Statutory Requirement of "Strongly Corroborative" Circumstances Makes Evidence of the Audience for a Defendant's Communication Relevant.

Section 373 requires proof that a defendant possessed the "intent that another person engage in" a violent felony and solicited another person to engage in that violent act "under circumstances *strongly corroborative of that intent.*" § 373(a) (emphasis added). In other words, "the solicitation or command must be made under circumstances showing that the actor is serious that the 'crime of violence' be

7

carried out." S. Rep. N. 98-225, 98th Cong. 1st Sess., 1984 U.S.C.C.A.N. 3182, 3488 (1983). "Thus, a person at a baseball game who shouts 'Kill the Umpire' would not be guilty of the offense since the circumstances would not bear out the conclusion that he genuinely wanted the result." *Id.*; *accord* S. Rep. No. 97–307, 97th Cong. 1st Sess. 182 (1981) ("the surrounding circumstances would not bear out the conclusion that he genuinely possessed the requisite intent that another person kill the umpire"). "Similarly, the drunk in the corner bar who asks the bartender to murder his wife would probably not be guilty since the surrounding circumstances cast a reasonable doubt as to his intent." S. Rep. No. 97-307, 97th Cong. 1st Sess. 182 (1981). Importantly, "[t]hese same principles apply to expressions of political hyperbole." *Id.*

The nature and specificity of the audience – or lack thereof – thus directly relate to whether circumstances "strongly corroborate" a speaker's serious intent to propose that another person commit a violent criminal act. The fact that a specific proposal is presented to a specific individual can certainly constitute a circumstance that is strongly corroborative of the defendant's intent. *See United States v. Cardwell*, 433 F.3d 378, 383 (4th Cir. 2005) (discussing solicitation made to specific individual). Indeed, the overwhelming majority of serious criminal solicitations undoubtedly occur in private through communications to a specific individual for the obvious reason of avoiding scrutiny from law enforcement.

8

Likewise, if Tony Soprano "direct[s] a subordinate to kill a rival gang leader[,]" such circumstances would be consistent with a solicitation in violation of § 373. S. Rep. No. 97–307, 97th Cong. 1st Sess. 181 (1981). Individual in-person communications thus make it more likely that a defendant's proposal constitutes a serious effort to partner with or hire another person to commit a violent felony "under circumstances strongly corroborative of that intent." Accordingly, it does not follow that simply because "a specific person-to-person request is not required" to violate § 373, Gov't Mot. (ECF 60) at 6 (quoting *White*, 610 F.3d at 960), that the absence of such a request is irrelevant.

### B. Audience is Also Relevant to a First Amendment Defense.

Speech made to a wide audience is more consistent with abstract advocacy and more likely to receive First Amendment protection. *See Thomas v. Collins*, 323 U.S. 516, 540-41 (1945). Moreover, it is well established that political speech in a public arena receives far greater constitutional protection than private speech delivered one-on-one. *Claiborne Hardware Co.*, 458 U.S. at 908-11 (noting "close nexus" between First Amendment protected advocacy and freedom of assembly).

### C. *United States v. White* Supports Rejection of the Government's Motion.

The Seventh Circuit's decision in *White* makes clear that evidence regarding the audience of a defendant's postings on the internet are relevant and admissible with respect to the elements of § 373. In *White*, the defendant "created and maintained [a] website" affiliated with a white supremacist organization. 610 F.3d

at 957. On his website, the defendant identified individuals he believed were responsible for the federal conviction of a white supremacist leader and said they "deserved assassination." *Id.* In particular, he identified federal agents, prosecutors, and others as responsible in some way for the conviction and who could be targets of an "unknown nationalist assassin," but did not immediately publish personal information on those targets because "he felt 'there [was] so great a potential for action.'" *Id.*

The defendant then created a posting entitled "The Juror Who Convicted [the white supremacist leader]." *Id.* In that post, the defendant published personal identifying information that included the jury foreperson's full name, a color photograph of the juror, birth date, address, animal name, home phone number, cell number, work number, and identified the juror as living with a gay black partner. *Id.* at 957-58.

While this posting was available on the internet generally, the government sought to introduce evidence of "the website's readership, audience, and the relationship between White and his followers which [would] show the posting was a *specific request* to White's followers, who understood that request and were capable and willing to act on it." *Id.* at 962 (emphasis added). Accordingly, even though the defendant's posts were available generally to anyone who visited his website, the government sought to prove that the defendant directed his posts at a specific

audience consisting of the defendant's violent followers who constituted the primary readers of his white supremacist website.

Nothing like the circumstances of *White* exist in this case. Although Mr. Stinson founded a non-violent protest organization *after* the charged posts, he was (and is) not a leader of a violent organization and had no organizational followers at the time of the charged offense conduct. His posts also occurred on well-known public social media sites – not on a website with a specific audience of individuals who endorse violence. Mr. Stinson's post concerned a public political figure, the President, and included no information designed to assist another person in committing a violent act against the President.

The Court therefore should deny the government's motion to exclude evidence and argument regarding the audience of Mr. Stinson's general posts on popular social media platforms. Such evidence is directly relevant to the non-existence of "circumstances strongly corroborative of [an] intent" to seriously propose to hire or partner with or direct a subordinate or follower to commit a violent felony.

### III. The Government Has No Good Faith Basis to Seek a Judicial Order Barring Argument as to Matters of Law or Punishment.

The government seeks an order barring the defense from arguing matters of law (such as whether the President is an officer or employee of the United States and whether 18 U.S.C. § 1114 constitutes a crime of violence), and potential punishment. *See* Gov't Mot. (ECF 60) at 8-9, 14-16 (Topics 3 and 7). While defense

counsel acknowledges that these are matters for the Court, not the jury, such an anticipatory order is unnecessary and inappropriate.

To be sure, it is the Court's responsibility to decide questions of law. *See, e.g., Sparf v. United States*, 156 U.S. 51, 102 (1895). It is also settled that a jury would be required to reach its verdict in this case without being informed as to the possible sentence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994).[1]

The government therefore lacks a good faith basis to believe that the defense intends to violate these settled precedents by arguing legal issues or addressing possible punishment in arguments to the jury. If the Court is inclined to grant such a motion, it should similarly bar the government from engaging in obvious prosecutorial misconduct such as vouching for the credibility of law enforcement officers or making reference to Mr. Stinson's potential decision not to testify at trial.

Although "the Federal Rules of Criminal Procedure do not have an equivalent to Rule 11 of the Federal Rules of Civil Procedure" forbidding parties from advancing frivolous claims, it nevertheless "would be hard to square with basic due process notions of fairness if the prosecution in a criminal case were free to secure the admission of otherwise inadmissible evidence merely by pressing a frivolous claim or theory at trial." *United States v. Rankin*, 651 F. Supp. 3d 523, 562 (D.

---

[1] The rule announced in *Shannon* is not constitutional and, according to the dissenters, was not properly grounded in precedent. 512 U.S. at 588-89 (Stevens, J., dissenting). Academic criticism of the rule also exists. Daniel Epps & William Ortman, *The Informed Jury*, 75 Vand. L. Rev. 823 (2022). But none of that means that defense counsel has any intention of making arguments to the jury regarding possible punishment.

Conn. 2023). Moreover, Local Crininal Rule 57.4(J) provides that ethical standards in federal criminal cases in this District are governed by the Virginia Rules of Professional Conduct, and Rule 3.1 of the Virginia rules requires lawyers to have a good faith basis to "assert or controvert an issue therein."

Because the government lacks a good faith basis in this case to request an order barring the defense from making obviously inappropriate arguments regarding questions of law or punishment to the jury, the government's motion in limine requesting such an order should be denied. If concerns about inappropriate argument arise during trial, the Court can address them through curative instructions.

### IV. Evidence Regarding the U.S. Secret Service's Threat Assessment Is Likely Admissible.

The government seeks to preclude the defense from eliciting testimony regarding the initial charges against Mr. Stinson for making threats in violation of 18 U.S.C. § 871. The defense does not plan on adducing testimony regarding the dismissed threat charges in this case. Nonetheless, the Court should deny the government's motion. In the event that this issue is presented during the trial, the Court can decide in the context of the admitted evidence whether testimony on the prior charges is relevant and admissible.

The government also argues that evidence of the U.S. Secret Service's threat assessment, and its conclusion that Mr. Stinson did not present an "immediate threat" to President Trump in May 2025 because he "did not possess any firearms

13

or weapons, and generally remained compliant and calm," is irrelevant and would "confuse the jury." Gov't Mot. (ECF 60) at 10-11. The government cannot credibly make this argument when evidence of the opposite circumstance would likely be both admissible and central to their case.

"[T]he fact that [a] defendant acquired weapons, tools or information suited for use by the person solicited in the commission of the offense, or made other apparent preparations for the commission of the offense by the person solicited[,]" would constitute "strongly corroborative circumstances" that are "highly probative of intent." *United States v. Gabriel*, 810 F.2d 627, 635 (7th Cir. 1987) (quoting S. Rep. No. 97–307, 97th Cong. 1st Sess. 183 (1981)). For example, a defendant's "acquisition of [explosive] cartridges only a short time after he solicited [another person] to bomb [a] courthouse permitted the inference that the explosives were intended to carry out that plan." *United States v. Barefoot*, 754 F.3d 226, 239 (4th Cir. 2014). Accordingly, if evidence existed that Mr. Stinson had recently "acquired weapons, tools or information suited for use … or made other apparent preparations" for another person to attempt to assassinate President Trump, the government would undoubtedly seek to introduce such evidence to establish that Mr. Stinson's alleged solicitation occurred under circumstances showing that he was seriously intending to hire or partner with another person to assassinate President Trump.

On the other hand, the absence of any such conduct is likewise admissible to show that Mr. Stinson's posts reflected mere venting or online ranting, and did not occur under circumstances "strongly corroborative" of a serious intent to hire or partner with another person, or direct a follower, to assassinate the President. Testimony from Special Agent Hernandez or others regarding the assessment that Mr. Stinson did not pose an immediate threat to President Trump in May 2025 would therefore likely be admissible at trial because it tends to support the absence of "strongly corroborative" circumstances showing a serious intent to solicit the assassination of President Trump.

While the government claims that the May 7, 2025, email attached as Exhibit 1 to its motion constitutes inadmissible hearsay, testimony about the contents of the email may be admissible pursuant to Federal Rule of Evidence 613 as a prior inconsistent statement. Likewise, the email may be used to refresh a witness's memory under Rule 612. As such, the Court should not make a speculative ruling now regarding admissibility given that the Court would be far better able to assess the relevance and admissibility of such testimony in the context of the trial.

At bottom, the government's motion in limine is simply an effort to avoid the introduction of admissible evidence that is contrary to its central allegation. The Court should deny the motion in limine on this ground.

## V. Evidence Regarding Mr. Stinson's "Good Conduct," Relevant Personal Character Traits, and Lack of Criminal History May Be Admissible At Trial.

The government argues that evidence of Mr. Stinson's "good conduct" is inadmissible pursuant to Federal Rules of Evidence 404 and 405, and similarly that evidence or argument as to his "lack of prior criminal convictions" should be excluded. Gov't Mot. (ECF 60) at 12-13. The Court should deny the motion and consider the government's objection to such arguments and testimony, if any, in the context of the trial.

### A. Evidence that Mr. Stinson is Peaceful and Law Abiding is Pertinent to the Charged Offense.

Federal Rule of Evidence 404(a)(2)(A) authorizes the defense to offer evidence of a defendant's "pertinent trait," and for the prosecution to offer evidence to rebut such evidence. "Pertinent" means relevant. *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981).

In a prosecution for soliciting a crime of violence in violation of § 373, Mr. Stinson's character for being peaceful is directly pertinent because evidence of peaceful character makes it less likely that he seriously intended to solicit the assassination of President Trump. *See United States v. Hassouneh*, 199 F.3d 175, 182-83 (4th Cir. 2000) (holding that because charged offense required proof of evil purpose or motive, district court's exclusion of evidence of reputation for jocularity constituted an abuse of discretion). Accordingly, Mr. Stinson's lack of previous convictions or conduct comparable in any respect to a serious effort to assassinate

16

the President of the United States tends to support the absence of "strongly corroborative" circumstances evincing a serious intention to solicit someone to do so.

Moreover, reputation or opinion testimony regarding Mr. Stinson's character as a peaceful and law-abiding citizen would be admissible regardless of the nature of the charge. *See United States v. Covington,* 2023 WL 8482581, at *2 (E.D. Va. Dec. 7, 2023) (admitting opinion or reputation testimony as to law-abiding character because "[a] criminal defendant's character as a law-abiding citizen is always pertinent"); *see also United States v. Siers*, 873 F.2d 747, 749 (4th Cir. 1989) (noting admission of testimony that defendant's "reputation in the community for being peaceful and law abiding"); *Sutherland v. United States*, 92 F.2d 305, 308 (4th Cir. 1937) (finding "error in excluding the testimony offered by defendant as to his general reputation as a law-abiding citizen").

### B. The Government Would Seek to Admit Evidence of Violent Prior Conduct.

In *United States v. Barefoot*, 754 F.3d at 236, the Fourth Circuit affirmed the admission under Rule 404(b) of evidence that a defendant had previously committed a murder with a person he was charged with soliciting to blow up a courthouse. Such evidence, the court held, was "relevant to show that Barefoot was devising a serious scheme to blow up the courthouse," because it "demonstrated to the jury that these men were not merely men who talk, but men who act[,]" and he was not merely a "braggart" engaged in "little more than idle musings." *Id.* Similarly, "the fact that [a] defendant believed or was aware that the person solicited had

previously committed similar offenses" is a fact that is "highly probative" of a defendant's serious intent to solicit another person to commit a violent offense. *Gabriel*, 810 F.2d at 635 (quoting S. Rep. No. 97–307, 97th Cong. 1st Sess. 183 (1981)).

The government cannot credibly argue that evidence of peaceful character should be excluded when, if the tables were turned, it would undoubtedly seek to admit evidence of Mr. Stinson's history of comparable violent conduct. Mr. Stinson's lack of previous convictions or conduct comparable in any respect to a serious effort to assassinate the President tends to support the absence of "strongly corroborative" circumstances evincing a serious intention to solicit someone to do so. The Court thus should deny the government's motion in limine as premature, unsound, and unfounded.

## Conclusion

Granting the government's broad motion in limine would prevent Mr. Stinson from presenting evidence central to distinguishing between protected political speech and criminal conduct—a distinction that lies at the heart of this case.

Respectfully submitted,

**PETER STINSON**

By counsel,

/s/ Geremy C. Kamens
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender

Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
703-600-0848
703-600-0880 (fax)
Geremy_Kamens@fd.org

Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
703-600-0817
703-600-0880 (fax)
Brittany_Davidson@fd.org