IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 1:25-CR-209 |
| | ) | |
| PETER ANDREW STINSON | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS SUPERSEDING INDICTMENT FOR SELECTIVE PROSECUTION

Defendant Peter Andrew Stinson moved this Court to dismiss the Superseding Indictment on the grounds of unconstitutional selective prosecution, or in the alternative, to allow discovery on the issue. ECF No. 62 (the "Motion"). That Motion should be denied. Stinson is being prosecuted solely because he solicited and endeavored to persuade another individual to murder the President of the United States Donald J. Trump. There is no factual or legal basis for his allegation of selective prosecution, and it should be rejected.

BACKGROUND

On August 13, 2025, a grand jury in the Eastern District of Virginia returned a Superseding Indictment charging the defendant with one count of violating 18 U.S.C. § 373 (Solicitation of a crime of violence, namely 18 U.S.C. § 1114(a), Murder of an Officer or Employee of the United States). ECF No. 45 (the "Superseding Indictment"). As alleged in the Superseding Indictment, on February 18, 2025, the defendant solicited and endeavored to persuade another person to murder the President of the United States Donald J. Trump when he posted on his Bluesky account: "Take the shot. We'll deal with the fallout." This post was surrounded by numerous other posts in which the defendant repeatedly expressed his desire for another individual to murder President Trump. For example, on February 18, a few hours after

the abovementioned post, the defendant posted: "Politically the only solution is impeachment. Realistically the only solution is violence." On February 15, 2025, three days prior, he wrote: "He who kills the President to save the country has broken no laws." On February 21, 2025, he posted: "Can we crowd source a contract hit."

The defendant's Bluesky posts were preceded by years of similar posts on X in which he expressed his desire that someone kill President Trump starting in 2020. For example, On April 1, 2020, the defendant posted on his X account, about President Trump, that "[h]e wants us dead. I can say the same thing about him." On April 4, the defendant posted, about President Trump: "somebody ought to do more than sue the orange mf's ass"; "It involves a rifle and a scope, but I can't talk about it here"; "I'd be willing to pitch in $100 for a contract. Who wants to join me? We could solve the solvable part of this problem in a crack. Then, we can focus on the coronavirus itself."

On April 5, in response to a post by another user that discussed using your vote in the upcoming 2020 election to get rid of Trump, the defendant posted: "Actually, there is another way out of this mess. But it would be messy. And illegal. It might be what we have to do, however." On April 6, in response to a post that read, "Trump says the democrats 'shouldn't be allowed to win' the election because of how good a job he's done. He says they were 'artificially stopped' by the virus," the defendant posted**:** "What a fucking moron. Would someone just pull the proverbial trigger, please" and followed with an additional post the same day, reading: "I would do it. I would take the fall to save America. Too bad I don't have the operational skills to pull it off. I am willing to serve in a support capacity for someone else with the skills to take care of things." On April 15, in response to a post by another user reading, "No President in history has ever used the Constitutional power to adjourn Congress," the defendant

wrote**:** "There must be somebody who can take care of this. Just end this chapter. And we'll start fresh. Just. Do. It. Please. I'll drive."

On July 6, in response to a post by another user reading, "Analysis: Trump will accept a 'steady' few hundred coronavirus deaths a day as the cost of his re-election," the defendant wrote: "I can't shoot, but I can drive. Let's just take care of things." On August 6, in response to a post by another user reading, "Why are Trump users unable to recognize that he is a wolf in sheep's clothing, namely a megalomaniac, a liar, a grifter, a failure, devoid of lucidity, unintelligible, corrupt and totally uninterested in the wellbeing of Americans?" The defendant replied, "They want to be like him." And in a separate post, he posted, "Yes, I would pull the trigger. Would you?"

On August 26, the defendant posted: "Only racists and fascists will cast their vote for the orange mf." Following that post he posted, "I would pull the trigger."

On October 6, the defendant posted: "There would be no patriotic funeral. We'd make sure of that." In separate posts the same day, the defendant posted the following series of messages and replies to other posts:

- "I'd pull the trigger. But I'm not a good enough shot."
- "I'll drive."
- "I'm willing to drive."
- "He needs to be punched to a different reality."

On December 3, the defendant posted: "Let's end this national nightmare now. I'll drive." On January 3, 2021, he said: "Let's just shoot the orange and put him out of his misery."

The defendant stopped using X approximately a month after it was taken over by Elon Musk. His final post was on November 19, 2022, in response to a post reading, "Would you

3

accept an all-expenses paid trip to Mar-a-Lago?" The defendant posted: "Only if I could do, with impunity, what we all wish someone would do, but we don't want to talk about it."

ARGUMENT

I. Stinson Fails to Show Any Basis for a Finding of Selective Prosecution

    A. Courts Afford the Executive Branch
        Great Deference in Enforcement of Federal Law

Federal prosecutors retain broad discretion to enforce the nation's criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464 (1996).[1] "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

That principle is founded on several important considerations. First, prosecutorial discretion is a core element of the Executive's power to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. *United States v. Bass*, 536 U.S. 862, 864 (2002).

Second, "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). The factors the Government must consider in deciding to prosecute, such as the strength of the case, the general deterrence value, and the government's enforcement priorities, "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id*.

Lawful considerations also include such factors as the strength of the evidence against a particular defendant; the defendant's role in the crime; the defendant's candor and willingness to plead guilty; the amount of resources required to convict a defendant; the extent of prosecutorial

---

[1] Internal citations and quotations are omitted throughout this pleading.

resources available; the potential impact of a prosecution on related investigations and prosecutions; and prosecutorial priorities for addressing specific types of illegal conduct. *United States v. Lighty*, 616 F.3d 321, 370 (4th Cir. 2010).

Third, judicial review of prosecutorial decision-making "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Wayte*, 470 U.S. at 607.

Finally, judicial scrutiny of a prosecutor's charging decisions imposes high costs on the criminal justice system. The purpose of a criminal proceeding is to determine a defendant's guilt or innocence. Examination of the prosecutor's reasons for bringing a prosecution diverts the proceeding from that central issue, resulting in delay that can be "fatal to the vindication of the criminal law." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). Those factors "make the courts properly hesitant to examine the decision whether to prosecute." *Wayte*, 470 U.S. at 608.

B.  Elements to Prove Selective Prosecution

In light of these principles, prosecutorial decisions are entitled to a "presumption of regularity." *Armstrong*, 517 U.S. at 464. Accordingly, a defendant claiming selective prosecution "bears a heavy burden." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997). "Unless a defendant provides clear evidence to overcome the presumption that a government prosecutor has acted lawfully and without discrimination - - a particularly demanding standard - - he cannot demonstrate a constitutional violation for selective prosecution." *United States v. Passero*, 577 F.3d 207, 219 (4th Cir. 2009).

To discharge this formidable burden, "a defendant must demonstrate that the prosecution had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608.

5

Meeting this burden requires the defendant to establish both (1) that "he has been singled out while others similarly situated have not been prosecuted; and (2) that the decision to prosecute was invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to exercise his constitutional rights." *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986).

Because of the special considerations implicated by judicial inquiry into an exercise of prosecutorial discretion, those two elements of the claim must be satisfied by "exceptionally clear proof." *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987). In the absence of such proof, courts presume that a prosecution for violation of a criminal law has been undertaken in good faith for the purpose of bringing offenders to justice. *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995).

    C.    Stinson Has Presented No Evidence of Individuals Who Were Similarly Situated But NOT Similarly Prosecuted

In this case, Stinson has provided the court with no examples of individuals who were *not* prosecuted for soliciting or endeavoring to persuade another person to murder the President. To the contrary, Stinson concedes in his Motion that "counsel has not identified any comparable prosecution for solicitation of a crime of violence based upon mere persuasive speech online without any specific and serious proposal designed to instigate another person to engage in a specific crime of violence." Motion at 7. There have been no such prosecutions because the government has not identified others similarly situated. If the government was aware of others who had similarly solicited a crime of violence against the President, but were *not* prosecuted, it would do its best to evaluate whether they should be prosecuted as well. Nevertheless, in this context, it is not the government's burden to identify others similarly situated; that is Stinson's burden, and he has failed to carry it.

Stinson also cites statistics from the U.S. Capitol Police website's most recent press release which states that it investigated thousands of "concerning statements" and threats against

Members of Congress and their staff and family, but, according to the U.S. Sentencing Commission, only 278 threats were federally prosecuted in 2024. On this basis, Stinson claims that the government did not prosecute conduct similar to Stinson's. This argument is equally unpersuasive. At the outset, *threats of violence* are prosecuted entirely differently from *solicitations of violence*. Moreover, Stinson is citing statistics regarding threats against Members of Congress and their family and staff. But this is a case about a solicitation of a crime of violence against the President. These comparisons render Stinson's argument irrelevant to a claim of selective prosecution in this case. Even considering that there were thousands of "concerning statements" made against Members of Congress and their family and staff, without more specificity on the nature of the types of statements that went unprosecuted, whether those individuals were prosecuted under other, more serious, federal statutes for their conduct, whether those statements were even made by people living in the United States, and many other factors that would place the speaker of those statements similarly situated with Stinson, his argument falls far short of arguing that he was selectively prosecuted while others similarly situated with him were not.

"Discrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in similar circumstances." *Attorney General v. Irish People, Inc*., 684 F.2d 928, 946 (D.C. Cir. 1982). Defendants "are similarly situated when their circumstances present *no* distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Khan,* 461 F.3d 477, 497-87 (4th Cir. 2006) (emphasis in original). *Accord United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016). In light of this clear principle, Stinson's conclusory statements that his prosecution is selective must be rejected.

In sum, Stinson has failed to make even a *de minimis* showing of any discriminatory effect, "the first hurdle in the selective prosecution analysis." *United States v. Lindh*, 212 F. Supp. 2d 541, 566 (E.D. Va. 2002) (Ellis, J.).

D.  No Evidence of Invidiousness or Bad Faith

Stinson also fails to provide any, non-speculative proof for the second required prong, namely, that the prosecution was "invidious or in bad faith, i.e., based upon . . . the desire to exercise his constitutional rights." *Greenwood*, 796 F.2d at 52.

The decision whether to prosecute a particular defendant on particular charges ordinarily rests entirely in the discretion of the Executive Branch. *Bordenkircher*, 434 U.S. at 364. A narrowly-circumscribed but important exception to this broad prosecutorial discretion is the rule that "the decision to prosecute a defendant may not be exercised vindictively, that is, that the decision to prosecute may not be made in retaliation or in vengeance for that defendant's exercise of his rights under the law." *United States v. Biheiri,* 341 F. Supp. 2d 593, 598 (E.D. Va. 2004) (Ellis, J).

A criminal defendant must establish prosecutorial vindictiveness by presenting objective evidence showing the prosecutor acted with genuine animus toward the defendant, and that the defendant would not have been prosecuted but for that animus. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). Here, the defendant does not present "objective evidence" showing the prosecutors acted with genuine animus towards him.

To establish vindictive prosecution in the absence of direct evidence of an improper motive, the defendant must present "evidence of circumstances from which an improper vindictive motive may be presumed." *Wilson*, 262 F.3d at 314. Further, to invoke such a presumption, "a defendant must show that the circumstances pose a realistic likelihood of

vindictiveness." *Id*. Stinson fails to do that, either. Instead, he argues that the government's timing of investigating Stinson, which began alongside his application for a permit to non-violently protest against President Trump, reveals discriminatory intent. Such rank speculation could be made in any case, and decidedly is not "evidence," *Bass*, 536 U.S. at 863, that he is being prosecuted "because of" his exercise of First Amendment rights. *Wayte*, 470 U.S. at 610. That is to say, Stinson's exercise of his rights under the First Amendment did not cause the government to charge him with a solicitation of a crime of violence. Stinson's solicitations themselves led the government to pursue that charge.

In support of his speculative argument that the timing of Stinson's investigation reveals discriminatory motive, Stinson cites *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973). In *Falk*, the defendant was convicted on three counts relating to the failure to possess a draft card and on a fourth count, for refusing to submit to induction. Falk alleged that the government prosecuted him "to punish him for and stifle his and others' participation in protected First Amendment activities in opposition to the draft and the war in Vietnam." *Id*. at 619-20. Stinson argues that like the defendant in *Falk*, he too was prosecuted "only after his effort to engage in protected expression attracted government scrutiny." Motion at 9. When Stinson quotes *Falk* to argue that this timing "'add[s] forceful weight to [the] contention that the prosecution in this case was for the purpose of punishing [Mr. Stinson] for his exercise of First Amendment rights,'" *Id*. (quoting *Falk*, 479 F. 2d at 622), he leaves out the context in which this statement was made by the Seventh Circuit; that is, Falk was charged *three years* after the culpable conduct. The significant lapse in time in *Falk* indicated to the court that the government was acting with improper motives. Here, the government charged Stinson within four months of his solicitations to commit

a crime of violence. *Falk* is silent on the inferences that can be drawn from investigations that begin alongside or as a result of a defendant's exercise of constitutional rights.

Further, Stinson also leaves out the fact that *Falk* provided significantly more evidence of vindictive prosecution than Stinson has here. Indeed, in support of his *prima facie* case for selective prosecution, Falk showed that there were 25,000 men who had dispossessed themselves of their draft cards without facing criminal sections (while Stinson provides none), provided documentary evidence that government officials previously stated the government would not prosecute registrants who turned in their draft cards rather than burning them, and showed that the decision to prosecute him had been approved not only by the U.S. Attorney but also by various supervisors at the Department of Justice to reveal that the prosecution was more significant than the average draft case. *Id.* at 621-22. Stinson makes no similar showings here. Arguing that the government acted in bad faith simply on the basis of the sequence of events that transpired—that is, that the investigation into his online activities was initiated after he submitted a permit application to lead a First Amendment protest against President Trump—is unfounded, speculative, and, most importantly, incorrect.

The circumstances of this case do not lend themselves to a vindictiveness analysis. "The quintessential case warranting such a presumption arises where a prosecutor responds to a defendant's successful appeal by re-trying him on an additional charge, or a more serious charge, that could have been brought in the original prosecution." *Biheiri,* 341 F.Supp.2d at 599. Simply put, "[t]here is no basis for either a presumption or a conclusion of prosecutorial vindictiveness, where, as here, the government merely seeks . . . to hold defendant accountable for the full range of his criminal conduct." *Id*. at 599. *See United States v. Benkahla,* 437 F. Supp. 2d 541, 553 (E.D. Va. 2006) (Cacheris, J.) (denying claim of vindictive prosecution).

Stinson asserts that he is being prosecuted for exercising his right to free speech, but he wholly fails to show he is being punished for lawful speech. The First Amendment affords him no protection for soliciting others to kill the President. Indeed, the crime with which Stinson has been accused is incredibly serious, and he cannot establish that he would not have been prosecuted but for the animus that he alleges. In light of the evidence that he endeavored another person to kill the President, that is to say, dozens of posts on his social media encouraging someone, anyone, to kill the President –as well as the *lack* of evidence of actual vindictiveness produced by Stinson—there can be no suggestion of "vindictive" prosecution; indeed, the government could more properly have been accused of dereliction in its responsibilities to investigate solicitations of a crime of violence had it *not* sought an indictment of Stinson.

In sum, the U.S. government has a compelling reason to protect the safety of federal officers and employees of the United States, and Stinson has failed to allege how the prosecution acted in bad faith by prosecuting him for soliciting and endeavoring to persuade others to murder a protected person, the President of the United States. Accordingly, the motion to dismiss the Superseding Indictment for selective prosecution should be denied.

II.     Stinson Fails to Establish the Necessary Predicate for Discovery

The same considerations that make courts reluctant to examine exercises of prosecutorial discretion, and that require exceptionally clear proof to establish a claim of unconstitutional selective prosecution, also determine the standard that govern discovery on such a claim. In order to avoid judicial encroachment into an area that the Constitution reserves to the Executive Branch, judicial inquiry into a prosecutor's reasons for bringing a prosecution should not even begin, unless there is a substantial and concrete basis for suspecting unconstitutional action.

"The justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. Enforcing a "rigorous standard" is required to prevent the diversion of prosecutors' resources and avoid disclosure of the Government's prosecutorial strategy, *see id*., and to "protect[] the Government from attempts by the defense to seek discovery as a means of harassment or of delay." *Wayte*, 470 U.S. at 624.

The principles set forth in *Armstrong* were reiterated in *United States v. Bass*, 536 U.S. 862 (2002) (*per curiam*). In *Bass*, wide-ranging discovery was sought by a defendant claiming the government had decided to seek the death penalty against him because of his race. The district court granted discovery of the government's capital charging practices, and then dismissed the death penalty notice when the government refused to comply. The Sixth Circuit affirmed the discovery order. The Supreme Court summarily reversed, citing *Armstrong*, and reiterating that in order to be entitled to discovery on a claim of selective prosecution, a defendant must make a "credible showing" that similarly situated persons of a different race were not prosecuted. To come to a contrary position, the Supreme Court continued, would threaten the "'performance of a core executive constitutional function.'" *Id*. (quoting *Armstrong*, 517 U.S. at 465).

The same is true in this case. To obtain discovery in support of a selective prosecution claim, "a defendant must produce some evidence making a credible showing of both discriminatory effect and discriminatory intent." *United States v. Olvis,* 97 F.3d 739, 744 (4th Cir.1996). *See Khan*, 461 F.3d at 497–98. In other words, in order to obtain discovery on a selective prosecution claim, a defendant must meet the same two-part test for selective prosecution (described above), albeit with "credible" evidence instead of "exceptionally clear proof." As explained above, Stinson has failed to produce evidence making a credible showing

of *either* discriminatory effect *or* discriminatory intent.[2] As a result, his motion for discovery must be denied.

CONCLUSION

For the reasons stated herein, the Court should deny the defendant's Motion to Dismiss the Superseding Indictment for Unconstitutional Selective Prosecution.

Respectfully submitted,

Lindsey Halligan
United States Attorney

By: _____/s/_____
Sehar F. Sabir
Assistant United States Attorney
NY Bar: 5431762
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: sehar.sabir@usdoj.gov

---

[2] If there is no one to whom Stinson can be compared, "then it follows that defendant has failed to make out one of the elements of its case." *Irish People, Inc.*, 684 F.2d at 946. The D.C. Circuit explained why the defendant's failure to provide evidence that similarly situated persons were not prosecuted barred him even from obtaining discovery on the issue:

> [W]e can see no reason for throwing out half the standard on the discovery issue. If either part of the test is failed, the defense fails; thus it makes sense to require a colorable claim of both before subjecting the Government to discovery.

*Id*. at 947-948 (footnote omitted).

**Certificate of Service**

I hereby certify that on September 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

                                                /s/
Sehar F. Sabir
Assistant United States Attorney
New York Bar No. 5431762
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
Sehar.sabir@usdoj.gov