IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

PETER ANDREW STINSON,

Defendant.

Criminal No. 1:25-CR-209

UNITED STATES REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE IMPROPER DEFENSE ARGUMENTS

The United States of America, by and through its attorneys, the United States Attorney for the Eastern District of Virginia and undersigned counsel, submits this Reply in support of its Motion *In Limine* To Preclude Improper Defense Arguments (ECF No. 60, the "Motion").

**1) First Amendment Arguments Should Not Be Presented to the Jury.**

As the government extensively briefed in its Response to the Motion to Dismiss the Superseding Indictment, this case is not about whether Stinson's statement made on February 18, 2025, is a solicitation to commit a crime of violence or abstract advocacy of violence that doesn't incite imminent lawless action. *See* ECF No. 79. The pertinent question here is whether or not Stinson's statement was a solicitation to commit a crime of violence, period. To put it simply, it is a yes or no question. The defense continues to weave into this case arguments under the guise of a defense regarding whether Stinson's speech constituted abstract advocacy of violence protected under the First Amendment and the Supreme Court decision in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), but that is an irrelevant defense here under a solicitation charge and should not be presented to the jury. *See United States v. Bell*, 414 F.3d 474, 482 (3d Cir. 2005) ("*Brandenburg* clearly does not apply to the kind of unprotected or unlawful speech or speech-

acts (e.g., aiding and abetting, extortion, criminal solicitation, conspiracy, harassment, or fighting words) at issue in *Paladin* and here.) (citing *Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 263–65 (4th Cir.1997) (concluding that "to understand [*Brandenburg* ] as addressing itself to speech other than advocacy would be to ascribe to it an intent to revolutionize the criminal law ... by subjecting prosecutions to the demands of *Brandenburg's* 'imminence' and 'likelihood' requirements whenever the predicate conduct takes, in whole or in part, the form of speech.").

Introducing the *Brandenburg* doctrine at trial through arguments as to whether Stinson's statement on February 18, 2025, constitutes abstract advocacy that is protected under the First Amendment because it doesn't incite imminent lawless conduct wholly confuses the issues here. The relevant issue for the jury to determine is simply whether or not the charged statement is a solicitation. That is the first element of a violation of 18 U.S.C. § 373. *See United States v. Barefoot*, 754 F. 3d 226, 237 (4th Cir. 2014) (the elements of a criminal solicitation are (1) a solicitation, command, or similar entreaty; (2) to commit a federal felony; (3) involving the actual or inchoate use of force against person or property; (4) made under such conditions or within such context that the overture may reasonably be regarded as sincere.) If the court allows arguments or instructions regarding the *Brandenberg* test for determining whether abstract advocacy of violence is protected, the jury is then inevitably misled into considering irrelevant issues, such as whether or not the proposed "abstract speech" incites imminent lawless action. But again, *Brandenburg* is inapplicable to solicitations of crimes of violence. Therefore, arguments and considerations regarding whether the speech at issue is likely to incite imminent lawless actions are also irrelevant. As defense counsel conceded in a footnote in its Motion to Dismiss the Superseding Indictment, there are no solicitation cases that proceeded under a theory of incitement. ECF No. 61 at 13 n. 2. That is because the two theories of prosecution concern

entirely different types of unprotected speech. The government wouldn't prosecute solicitations under an incitement theory because the two are unrelated.

To underscore this point, the Court should look to the text of the statute itself here which lays out a recognized defense to a solicitation charge. The defense argues that they are entitled to an instruction on their defense that Stinson was abstractly advocating for violence by citing to *Matthews v. United States*, 485 U.S. 58, 63 (1988), which states "a defendant is entitled to an instruction as to any *recognized* defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (emphasis added). Under the text of the applicable statute, 18 U.S.C. § 373(b), it is an affirmative defense for the defendant to have prevented the commission of the crime solicited, "under circumstances manifesting a voluntary and complete renunciation of his criminal intent." Notably missing here is a defense that the speech at issue constituted "abstract advocacy of violence" that does not "incite imminent lawless action." That is because it is not a defense. "The first amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose." *Paladin Enterprises*, 128 F.3d at 245 (internal citations and quotations omitted). In fact, the Fourth Circuit has considered First Amendment challenges to convictions of individuals who encouraged others to commit crimes perhaps more mundane than soliciting the assassination of the President. For example, in *United States v. Fleschner*, 98 F.3d 155, 158-59 (4th Cir. 1996), the court rejected the claims of defendants convicted for tax fraud who argued that the First Amendment protected them from prosecution for advocating violation of the tax laws. In *United States v. Kelley*, 769 F.2d 215, 217 (4th Cir. 1985), the court found that a defendant who urged others to file false tax returns was properly convicted of aiding and abetting preparation of false tax forms despite the fact that he only provided advice that the other individuals were free to

accept or reject, because "action was urged, the advice was heeded, and false forms were filed." *See also, Paladin Enterprises*, 128 F.3d at 245 ("Our own circuit, and every other circuit to address the issue, has likely concluded that the First Amendment is generally inapplicable to charges of aiding and abetting violations of the tax laws"); *United States v. Rahman*, 189 F.3d 88, 115 (2d Cir. 1999) ("It remains fundamental that while the state may not criminalize the expression of views—even including the view that violent overthrow of the government is desirable—it may nonetheless outlaw encouragement, inducement, or conspiracy to take violent action."). That urging others to file false tax returns was not protected by the First Amendment, urging others to assassinate the President of the United States surely is not, either. The only relevant and appropriate defenses in this case, under the text of the statute charged and its elements, is that the statement was not a "solicitation," or the defendant did not have the requisite intent. Because the law is clear that a solicitation of a crime of violence falls outside of the orbit of the First Amendment, the jury need not, and should not, be allowed to evaluate whether Stinson's February 18th statement was protected First Amendment speech.

The defense's citation to dicta in *United States vs. White*, 610 F.3d 956, 959 (7th Cir. 2010), does not support the argument that the defendant is entitled to a jury instruction on First Amendment law regarding whether or not the first element has been met, i.e., whether the statement at issue was a solicitation or not. When the Seventh Circuit acknowledged that the First Amendment "*may"* still have a role to play at trial in the form of jury instructions after the district court's evaluation of "the full factual record," it made this statement in the context of two of its other findings: 1) that it had been improper for the district court to perform a First Amendment analysis and then to dismiss the charges on the basis of its conclusions before trial; and 2) there was significant ambiguity as to White's *intentions* to solicit a crime of violence. *Id*.

at 962. In other words, the Court of Appeals recognized that a First Amendment analysis at the motion to dismiss stage in *White* was erroneous, but that to determine whether sufficient circumstances corroborated White's intent, a First Amendment *could* be warranted at trial because of the ambiguity of White's statements. White was charged with soliciting a crime of violence based on the following statement:

> Gay anti-racist [Juror A] was a juror who played a key role in convicting Matt Hale. Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name]. [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number].

*Id.* at 957–58. White's post did not make any statements about violence or what actions he wanted others to take. It simply provided others with personal information about a juror that "played a key role in convicting Matt Hale." Accordingly, the statement itself was ambiguous in so far as the intent behind making it. Here there is no similar ambiguity as to what the words of Stinson's February 18th statement conveyed. Unless Stinson suggests he's talking about basketball, his statement, "Take the shot. We'll deal with the fallout," unambiguously and specifically—not abstractly—conveys a command for someone to conduct a crime of violence. Based upon *this* factual record, there is no reason for the First Amendment to play a role at trial.

The defense argues that Stinson's post constitutes mere advocacy protected by the First Amendment and does not meet the factual prerequisites to constitute a "solicitation" in violation of § 373. Stinson defines a "solicitation" in violation of § 373 as "a specific proposal to hire or partner with another person or direction to a subordinate to commit a specific crime of violence, or instigation of a violent act sufficient to constitute incitement." ECF No. 66 at 3. This is an inaccurate definition of solicitation under Section 373; the elements of the charged offense do not require a specific partner or subordinate, and, as explained above, does not require an instigation of *any act*, much less a violent one or one that constitutes incitement. The defense's

repeated mischaracterizations of the elements of the charge at issue here further support the government's argument that defense should not be allowed to confuse the jury at trial with arguments related to the First Amendment, abstract advocacy or incitement. These arguments simply have no role to play in this trial.

**2) Lack of Identified Solicitee**

In its Motion, the government explained that the charged crime here, solicitation for a crime of violence against the President of the United States, does not require that Stinson specifically solicited an identifiable individual, directed a subordinate, or partnered with anyone in particular to be guilty of criminal solicitation. In light of this legal principle applicable to all criminal solicitations, the defense must not be allowed at trial to argue that Stinson is not guilty because the government cannot point its finger at a specific person that Stinson endeavored to persuade to assassinate President Trump. Such a ruling is deemed necessary by the fact that the defense has repeatedly argued various definitions of a criminal solicitation that assume the necessity of an identifiable individual that was solicited by Stinson.[1] Given these mischaracterizations, the Court should preclude the defendant from eliciting evidence or arguing to the jury that the defendant did not violate § 373 because the defendant never solicited a specific or identifiable individual to assassinate the President of the United States.

With that said, to the extent that the defense seeks to use the fact that there was no identifiable solicitee to argue that there weren't sufficient circumstances corroborating intent in

---

[1] *See, e.g.*, Defendant's Motion to Dismiss Superseding Indictment, ECF No. 61 at 2 ("Criminal solicitation in violation of 18 U.S.C. § 373 is limited to (1) specific proposals for another person to commit a violent crime, such as a serious effort to hire a hitman to kill a spouse; and (2) incitement."); Defendant's Response to the Government's Omnibus Motion *In Limine*, ECF No. 66 at 3 ("A 'solicitation' in violation of § 373 constitutes a specific proposal to hire or partner with another person or direction to a subordinate to commit a specific crime of violence, or instigation of a violent act sufficient to constitute incitement."); Defendant's Response to the Government's Motion In Limine to Admit Evidence, ECF No. 74 at 6 ("Nor do the previous posts lend credence to the government's claim that Mr. Stinson seriously proposed to partner or hire another person to assassinate President Trump in 2025.")

this case, the government has no objection. However, there is a clear distinction between arguing that the definition of a solicitation requires a solicitee—which the defense is repeatedly asserting—and the argument that the lack of a solicitee weakens intent. The former is incorrect and misleading as a matter of law, while the latter is reasonable.

**3) Testimony regarding the USSS Threat Assessment Is Irrelevant and Inadmissible**

In his Response, Stinson has failed to demonstrate why United States Secret Service (USSS) Special Agent (SA) Hernandez' testimony regarding her threat assessment made on May 7, 2025, is relevant and therefore "likely admissible" at trial. His first argument in support of allowing such evidence is that, if evidence existed of the opposite circumstance, presumably that Stinson did pose a threat, the government would be seeking to admit it. Not only is this an unfair assumption, but merely arguing the inverse of the government's point is not enough to overcome the test for relevance under Rule 401 (requiring relevant evidence to have a "tendency to make a [material] fact more or less probable than it would be without the evidence.")

Stinson's second argument is that the USSS threat assessment is relevant because it concerns the issue of whether the defendant has acquired weapons, tools, or information to solicit a crime of violence, which can be used to corroborate intent. However, this argument also fails to meet the test for relevance under Rule 401. The threat assessment at issue took place *nearly three months* after the charged conduct, and in the context of a short video that SA Hernandez watched of an interaction between Stinson and U.S. Park Police on the National Mall on May 7. The assessment that Stinson himself didn't pose an "immediate threat" to President Trump on May 7 because he seemed calm while talking to law enforcement and wasn't carrying firearms has nothing to do with whether he intended to solicit a crime of violence *three months* prior on February 18th. It is possible that the May 7 assessment would be relevant to whether Stinson

*himself was a threat* to President Trump in February, but that is not the charge alleged in the Superseding Indictment. As the government previously stated, in making her assessment, SA Hernandez does not comment on the defendant's posts soliciting others to kill the President, how troublesome or dangerous she assessed such solicitations to be, how sincere she believed the defendant was in trying to persuade others to harm the President, or whether she thought the defendant would ever be successful in soliciting someone to harm the President. She also does not comment on whether she believed the defendant had acquired weapons, tools, or information to solicit a crime of violence; she merely comments on the fact that on May 7, she saw the defendant was not carrying firearms and, based on other additional factors, didn't pose an "immediate threat" to President Trump. Indeed, rather than adding relevant evidence for the jury to consider, testimony regarding SA Hernandez's assessment would only serve to mislead the jury and confuse the issues about the nature of the charge alleged in the Superseding Indictment.

The defense has indicated to the government that they plan to call SA Hernandez as a witness in this trial. Accordingly, the government seeks a pretrial ruling on the issue that any testimony from SA Hernandez' regarding her May 7 assessment is irrelevant and inadmissible under Rule 401.

**4) Matters of Law, And Testimony Regarding Punishment and Character.**

The defense concedes that the issues of whether the President is an officer or employee of the United States under 18 U.S.C. § 1114 and whether Section 1114 constitutes a crime of violence, "are matters for the Court, not the jury" and that the jury is required to reach its verdict in this case without being informed as to the possible sentence. ECF No. 66, at 12. Counsel also claims they have no "intention of making arguments to the jury regarding possible punishment." *Id*. Accordingly, it is well within this court's power to grant the government's motion to preclude

such arguments at trial and it should do just that. To the extent the court feels it necessary, as the defense suggests, to issue an order barring prosecutorial misconduct at trial, the government has no objection.

Additionally, the defense contends that it should be allowed to offer evidence of Stinson's character for being peaceful because such a trait is directly pertinent to his intent to solicit the assassination of President Trump, and therefore admissible under Federal Rule of Evidence 404(a)(1). However, Rule 405(b) expressly prohibits evidence of relevant specific instances of a person's conduct unless the person's "character or character trait is an essential element of a charge, claim, or defense." In other words, evidence of specific instances is limited to "cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry." Fed. R. Evid. 405 advisory committee note. Indeed, the case defense cites is in line with Rule 405 and fails to support their argument. *See* Response at 16 (citing *United States v. Hassouneh*, 199 F.3d 175, 182-83 (4th Cir. 2000). In *Hassouneh*, the defendant was charged with making a false statement that there was a bomb in the bag he sought to place aboard a civil aircraft, in violation of 18 U.S.C. § 35(b). An element of the charged offense required the government to prove that the offender acted "willfully and maliciously, or with reckless disregard for the safety of human life." *Id*. at 176. The Fourth Circuit found that the district court had incorrectly instructed the jury on the meaning of "maliciously" which, in that context requires the defendant have acted with "evil purpose or motive." *Id*. at 182. Accordingly, evidence regarding the defendant's character trait as a prankster should have been admitted at trial because the defendant's "argument that his false statements were made in jest is relevant to the extent that his joking negates a finding that he acted maliciously." *Id*. Similarly, any evidence that Stinson is peaceful himself would not negate his intent for *another person* assassinate the

President. And Stinson's *character* is not an element of the offense here. Accordingly, such evidence should be deemed inadmissible.[2]

## CONCLUSION

For the reasons stated above, the government respectfully requests the entry of an order granting the Government's Motion *In Limine* Precluding Improper Defense Arguments.

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date: October 2, 2025 By: /s/

Sehar Sabir
Assistant United States Attorney
NY Bar Number: 5431762
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
sehar.sabir@usdoj.gov

[2] To the extent that the defense is arguing it should be allowed to introduce inadmissible evidence of the defendant's peaceful nature because, "if the tables were turned, [the government] would undoubtedly seek to admit evidence of Mr. Stinson's history of comparable violent conduct." Under Rule 404(b), such evidence would also be deemed inadmissible, unless a valid exception applied, and so such an argument debating hypothetical scenarios is unpersuasive and unfounded.

**CERTIFICATE OF SERVICE**

I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to any attorneys of record for Defendant.

By: ___/s/______________________________
Sehar Sabir
Assistant United States Attorney
NY Bar Number: 5431762
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
sehar.sabir@usdoj.gov