IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER ANDREW STINSON,<br><br>*Defendant*. | Case No. 1:25-cr-209-AJT |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENSE
MOTION TO PRECLUDE EVIDENCE**

The United States of America, by and through undersigned counsel, respectfully files this response in opposition to defendant Peter Andrew Stinson's motion to exclude any reference or testimony regarding the defendant's self-proclaimed affiliation with ANTIFA. ECF No. 78 (the "Def. Motion"). The defendant's repeated statements that he is ANTIFA is direct evidence of his *mens rea*, an element for which the government carries the burden of proof, and is therefore highly relevant and probative. The fact that this probative evidence is—like all incriminatory evidence—prejudicial to the defendant's case does not render that evidence unfairly prejudicial. The Court should accordingly deny the defendant's motion.

**BACKGROUND**

On August 13, 2025, a grand jury in the Eastern District of Virginia returned a Superseding Indictment charging the defendant with one count of violating 18 U.S.C. § 373 (Solicitation of a crime of violence, namely 18 U.S.C. § 1114(a), Murder of an Officer or Employee of the United States). ECF No. 45 (the "Superseding Indictment"). As alleged in the Superseding Indictment, on February 18, 2025, the defendant solicited and endeavored to persuade another person to assassinate the President of the United States Donald J. Trump when he posted on his Bluesky

account: "Take the shot. We'll deal with the fallout." This post was surrounded by numerous other posts in which the defendant repeatedly expressed his desire for another individual to assassinate President Trump. For example, on February 18, a few hours after the abovementioned post, the defendant posted: "Politically the only solution is impeachment. Realistically the only solution is violence." On February 15, 2025, three days prior, he wrote: "He who kills the President to save the country has broken no laws." On February 21, 2025, he posted: "Can we crowd source a contract hit."

The defendant's Bluesky posts were preceded by years of similar posts on X in which he expressed his desire that someone kill President Trump starting in 2020. For example, On April 1, 2020, the defendant posted on his X account, about President Trump, that "[h]e wants us dead. I can say the same thing about him." On April 4, the defendant posted, about President Trump: "somebody ought to do more than sue the orange mf's ass"; "It involves a rifle and a scope, but I can't talk about it here"; "I'd be willing to pitch in $100 for a contract. Who wants to join me? We could solve the solvable part of this problem in a crack. Then, we can focus on the coronavirus itself."

On April 5, in response to a post by another user that discussed using your vote in the upcoming 2020 election to get rid of Trump, the defendant posted: "Actually, there is another way out of this mess. But it would be messy. And illegal. It might be what we have to do, however." On April 6, in response to a post that read, "Trump says the democrats 'shouldn't be allowed to win' the election because of how good a job he's done. He says they were 'artificially stopped' by the virus," the defendant posted: "What a fucking moron. Would someone just pull the proverbial trigger, please" and followed with an additional post the same day, reading: "I would do it. I would take the fall to save America. Too bad I don't have the operational skills to pull it off. I am willing

2

to serve in a support capacity for someone else with the skills to take care of things." On April 15, in response to a post by another user reading, "No President in history has ever used the Constitutional power to adjourn Congress," the defendant wrote: "There must be somebody who can take care of this. Just end this chapter. And we'll start fresh. Just. Do. It. Please. I'll drive."

On July 6, in response to a post by another user reading, "Analysis: Trump will accept a 'steady' few hundred coronavirus deaths a day as the cost of his re-election," the defendant wrote: "I can't shoot, but I can drive. Let's just take care of things." On August 6, in response to a post by another user reading, "Why are Trump users unable to recognize that he is a wolf in sheep's clothing, namely a megalomaniac, a liar, a grifter, a failure, devoid of lucidity, unintelligible, corrupt and totally uninterested in the wellbeing of Americans?" The defendant replied, "They want to be like him." And in a separate post, he posted, "Yes, I would pull the trigger. Would you?"

On August 26, the defendant posted: "Only racists and fascists will cast their vote for the orange mf." Following that post he posted, "I would pull the trigger." On October 6, the defendant posted: "There would be no patriotic funeral. We'd make sure of that." In separate posts the same day, the defendant posted the following series of messages and replies to other posts:

- "I'd pull the trigger. But I'm not a good enough shot."
- "I'll drive."
- "I'm willing to drive."
- "He needs to be punched to a different reality."

On December 3, the defendant posted: "Let's end this national nightmare now. I'll drive." On January 3, 2021, he said: "Let's just shoot the orange and put him out of his misery."

3

The defendant stopped using X approximately a month after it was taken over by Elon Musk. His final post was on November 19, 2022, in response to a post reading, "Would you accept an all-expenses paid trip to Mar-a-Lago?" The defendant posted: "Only if I could do, with impunity, what we all wish someone would do, but we don't want to talk about it."

1. **The Defendant Identifies As ANTIFA And Has Anti-Fascist Views.**

Throughout the time period relevant to the Superseding Indictment, the defendant has repeatedly referred to himself as a member of ANTIFA and as someone deeply committed to fighting fascism, which—as the defendant notes—requires violence. Not only did the defendant describe himself, in his Bluesky profile description, as "#Virginiaantifa", but he also posted the following on his Bluesky account declaring himself as ANTIFA and discussing his views on fascism:

- July 15, 2024: "Time to start reading about fascism and authoritarianism and figuring out how to combat the scourge if we don't win at the ballot box in November. We must start deciding how we will respond. **I am antifa**." (emphasis added).

- July 21, 2024: "Fuck Vance. Fuck Fascism."

- September 9, 2024: "A reminder: those who support Trump are fascists. Plain and simple. We fought World War 2 over fascism. The fascists were, and still are, "the bad guys."

- October 5, 2024: "One Ear[1] is a fascist. You support him, you too are a fascist. Plain and simple."

- October 12, 2024: "All fascists are assholes. All MAGA supporters are fascists. Therefore, all MAGA supporters are assholes."

- November 7, 2024: "#resist. **#IAmAntifa**." (emphasis added).

---

[1] After the July 2024 assassination attempt on President Trump in Butler, Pennsylvania, the defendant consistently began referring to President Trump as "One Ear" in his social media posts.

4

- December 7, 2024: "Meanwhile, One Ear and his red hat followers are spending today looking for ways to destroy American institutions. It's all part of the fascist playbook."

- February 1, 2025: "Everyone has a story. Everyone is dealing with shit. I don't give a shit about fascists. To everyone else, stick together. **We are antifa**. Together we can kill the fascism." (emphasis added).

- February 2, 2025: "Sure. This is war. Sides will be drawn. Antifa always wins in the end. Violence is likely inherently necessary."

- February 4, 2025: "We're fighting fascism. Full stop."

- February 20, 2025: "Fascism always dies a violent death."

- February 27, 2025: "Our president is a fascist who has been compromised by a foreign power and serves their aims."

## Argument

### A. The Challenged Evidence Constitute The Defendant's Own Words And Is Highly Probative of the Defendant's Intent in Soliciting The Assassination Of President Trump.

The evidence the defendant seeks to preclude the jury from hearing in this case regarding his beliefs about Fascism is directly and clearly relevant to numerous aspects of the United States' case-in-chief—*most importantly* circumstances strongly corroborating the defendant's intent, which is an element of the crime charged in the Superseding Indictment. Federal Rule of Evidence 401 defines "relevant" evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Old Chief v. United States*, 519 U.S. 172, 178 (1997) (quoting Fed. R. Evid. 401). It is a "general proposition" of admissibility, then, that "*any* evidence which tends to make the existence of a fact of consequence to an issue in the case 'more probable or less probable' than without the evidence is relevant and therefore, as a general proposition,

5

...

=

admissible." *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (quoting Fed. R. Evid. 401, 402) (emphasis added).

The defendant's repeated posts 1) identifying himself as ANTIFA; 2) declaring his dedication to fighting fascism; 3) characterizing President Trump as a fascist; and 4) asserting that "Fascism always dies a violent death", are highly probative of his intent to solicit a crime of violence against President Trump and therefore admissible at trial. The elements of a solicitation of a crime of violence in violation of 18 U.S.C. § 373 are (1) a solicitation, command, or similar entreaty; (2) to commit a federal felony; (3) involving the actual or inchoate use of force against person or property; (4) made under such conditions or within such context that the overture may reasonably be regarded as sincere. *United States v. Barefoot*, 754 F. 3d 226, 237 (4th Cir. 2014) (internal quotations omitted). With respect to the fourth element, the government has the burden to prove, beyond a reasonable doubt, that the defendant intended for someone else to assassinate President Trump. At trial, the government plans to prove the defendant's intent through his repeated statements soliciting another individual to assassinate President Trump, for example by telling others to "Take the shot" on February 18, 2025. However, the defendant's solicitation on February 18th is rendered meaningless without context. Accordingly, the government plans to introduce the defendant's other statements demonstrating that, on February 18th, he was talking about assassinating President Trump and doing so because of his deep-rooted hatred for the President, who the defendant believes is a fascist. The defendant's belief that President Trump is a fascist, his repeated statements that he is "ANTIFA" and committed to fighting fascism, and his declaration that "Fascism always dies a violent death" is incredibly probative of the fourth element of the charged offense—that the defendant made his solicitations under circumstances that strongly corroborate his intent. *See, e.g.*, *United States v. Mostafa*, 16 F. Supp. 3d 236, 266-67 (S.D.N.Y.

2014) (concluding a defendant's statement that "everybody wants to kill [Jews, including Hitler]" was "relevant to the defendant's motive and intent regarding violent jihad").

The defendant's argument that this "criminal prosecution is not about [his] anti-fascist political beliefs but instead whether on February 18, 2025, he seriously solicited someone else to assassinate President Trump" is disingenuous. *See* Def. Motion at 1. Indeed, the defendant's decision to solicit the assassination of President Trump *entirely stems from his anti-fascist beliefs*. The two are inextricably linked. This is not a case where, as the defense suggests, the government should be precluded because it is attempting to introduce evidence relating to the defendant's "abstract beliefs" that "have no bearing on the issue being tried" or simply to "show that [the defendant] was morally reprehensible due to his abstract beliefs." Def. Motion at 4 (citations omitted). Indeed, "[t]he First Amendment does not bar evidence of a person's associations when it provides a link to criminal activity." *United States v. Walters*, 350 F. App'x 826, 829 (4th Cir. 2009). Barring the government from introducing evidence regarding the defendant's self-proclaimed associations with ANTIFA and his anti-fascist beliefs would leave the record entirely devoid of evidence of the defendant's motive, state of mind and *mens rea*—all of which directly and strongly support an element of the crime charged: his intent. Accordingly, the court should find that the defendant's affiliations with ANTIFA and posts about his anti-fascist beliefs are highly probative of his intent under Rule 401.

**B. The Evidence Is Not Unfairly Prejudicial.**

Defendant's gambit to exclude evidence of his guilt from the jury's consideration on the grounds of unfair prejudice (pursuant to Fed. R. Evidence 403) should be rejected. Rule 403 "is a rule of inclusion, generally favor[ing] admissibility." *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008) (internal quotation marks omitted). It provides that "[t]he court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the Fourth Circuit has observed, "all evidence suggesting guilt is prejudicial to a defendant." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006). That kind of general prejudice "is not enough to warrant exclusion of otherwise relevant, admissible evidence." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008). Instead, a court may exclude evidence under Rule 403 "only if the evidence is *unfairly* prejudicial and, even then, only if the unfair prejudice *substantially* outweighs the probative value of the evidence." *Id*. (emphasis in original). "Evidence is unfairly prejudicial and thus should be excluded under Rule 403 'when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)). Further, when performing a Rule 403 analysis, the court must account for "the offering party's need for evidentiary richness and narrative integrity in presenting a case." *Old Chief v. United States*, 519 U.S. 172, 183, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). For example, where evidence against a defendant is relevant, the Fourth Circuit has "found the admission of [even] gruesome and shocking [evidence, *i.e.*,] photographs [of murder victims] not to be unfairly prejudicial" when their admission is sought to establish the defendant's intent to cause death or injury. *United States v. Bullis*, 139 F.3d 893, at *8 (4th Cir. 1998) (table opinion) (collecting cases).

Here, the defendant's argument that allowing evidence and testimony regarding his affiliations with ANTIFA would be unfairly prejudicial and outweigh any probative value is unpersuasive and unsupported by the controlling caselaw. At the outset, the defendant argues that

"[p]ermitting the government to describe [him] at a member of ANTIFA would be highly prejudicial." Def. Motion at 4 (emphasis added). However, to the contrary, the government is not describing the defendant as a member of ANTIFA. The defendant *himself* described himself as a member of ANTIFA. The government is merely planning on conveying *the defendant's own description of himself* to the jury to prove his intent in soliciting a crime of violence. To the extent that the defendant is arguing that the government shouldn't be allowed to introduce evidence regarding the defendant's self-affiliations with ANTIFA because there is no evidence that the defendant was ever registered with an ANTIFA chapter—such evidence is irrelevant, to the extent it even exists. It doesn't matter if the defendant had actually "registered" as an official member of ANTIFA, and the government isn't seeking to prove such membership whatsoever. The defendant's argument would be akin to saying that an individual's self-proclamation as a member of ISIS is inadmissible because the government didn't have proof that the defendant had formally registered as an ISIS member. All that matters is that *he considered himself* ANTIFA. The government is merely concerned with the defendant's own state of mind at the time he has been charged with soliciting a crime of violence, and there is no better evidence of that than the defendant's own statements.

The cases cited by the defendant are inapplicable to the factual record at issue here. For example, the defendant quotes cases in which courts excluded evidence of gang affiliation where such evidence was being introduced "merely to prejudice the defendant or prove his guilt by association with unsavory characters." Def. Motion at 5 (quoting *United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005)). However, the government is not seeking to introduce the defendant's own statements that he is ANTIFA "merely" to try and prove guilt by association. Rather, his self-proclamation as ANTIFA and repeated anti-fascist beliefs are core to his motive and intent to solicit

9

a crime of violence against President Trump, who the defendant fundamentally believes to be fascist and therefore deserving of violence. These are the defendant's own statements, not the government's creative arguments. The government bears the burden of proof in this case, and the challenged evidence strongly supports the defendant's intent to commit the crime.

Similarly, defendant cites to the court's decision in *United States vs. Rui Jiang*, 1:24-cr-65 (RDA), which actually supports the government's position. In *Jiang*, the defendant was charged with three counts involving an attempted mass shooting at a local church court. Before the attempted shooting, he authored a document that the government described as a "manifesto" but the defendant himself referred to as "The Final Letter." *Id*. Accordingly, the court decided to preclude the term "manifesto" because it would improperly influence the jury's determination regarding the defendant's intent in writing the letter. *Id*. at 5-6. The government was, however, allowed to refer to the letter as "The Final Letter" during trial because those were the words the defendant *himself* used to describe the letter.

Here, the government is not labeling the defendant as anti-fascist or ANTIFA because of his political beliefs; the defendant himself affirmatively and repeatedly declares he is ANTIFA. It is the defendant who introduced this term into this case, not the government. Indeed, courts have found evidence less direct than the defendant's own statements to be admissible under Rule 403. *See, e.g., United States v. Siraj*, No. 07-0224-CR, 2008 WL 2675826, at *2 (2d Cir. July 9, 2008) (affirming the admission of allegedly prejudicial radical Islamist books from the bookstore at which the defendant had worked in part because, to the extent the defendant recommended the books, they were relevant to show predisposition.) For these reasons, government should not be precluded from introducing highly relevant and probative evidence regarding the defendant's descriptions of himself and his beliefs about why President Trump should be assassinated.

Further, exclusion, rather than inclusion, of such highly probative evidence is likely to mislead the fact-finders. The jury is entitled to know the full story of defendant the defendant's public exhortations to assassinate the President. "[B]eyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be." *Old Chief*, 519 U.S. 172 at 188. Put another way, the government must be able to tell the story of why the defendant wanted President Trump assassinated. It was because the defendant was ANTIFA and believed President Trump was a fascist. The challenged evidence is as essential to the story of the case as it is to the elements of the charged offense. It poses no risk of unfair prejudice, let alone any risk that outweighs its high probative value.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court deny defendant's motion to exclude evidence and testimony regarding "ANTIFA." Such evidence is directly relevant to an element of the charged offense and is thus prejudicial only in the sense of suggesting that the defendant is guilty of the charged conduct.

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date: October 13, 2025

/s/
Sehar F. Sabir
NY Bar Number 5431762
Assistant United States Attorney
United States Attorney's Office, EDVA
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
sehar.sabir@usdoj.gov

11

## **CERTIFICATE OF SERVICE**

   I certify that on October 13, 2025, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

              /s/
            Sehar F. Sabir
            Assistant United States Attorney
            United States Attorney's Office for
            the Eastern District of Virginia