IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>PETER ANDREW STINSON, )<br>)<br>Defendant. ) | Case No. 1:25-cr-00209<br>Hon. Anthony J. Trenga<br>Trial: October 27, 2025 |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO PARTIALLY EXCLUDE TESTIMONY FROM DEFENSE EXPERT GOLBECK**

The government moves to exclude testimony from Dr. Jennifer Golbeck principally on the grounds that the proposed testimony is irrelevant to any material issue, unreliable, would violate Federal Rule of Evidence 704, and because of political bias. The Court should deny the government's motion because the proposed testimony would help the jury understand the online context in which the charged statements were made, Dr. Golbeck is extraordinarily qualified to testify regarding that context, and the proposed testimony is directly relevant to both the elements of the charged offense and the application of the First Amendment to Mr. Stinson's speech.

Rule 702 was intended to liberalize the introduction of relevant expert evidence. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1158–59 (4th Cir.1996). Consequently, "[t]he court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Indeed, "[t]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule."

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018).

In sum, "an intelligent evaluation of facts is often difficult or impossible without application of ... specialized knowledge. The most common source of this knowledge is the expert witness ...." *Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1143 (4th Cir. 1980) (quoting Fed. R. Evid. 702, 1972 advisory committee notes). As with all other admissible evidence, expert testimony is subject to being tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

## I. Dr. Golbeck is Extraordinarily Well-Qualified To Provide Expert Testimony on Social Media and Online Behavior.

Dr. Golbeck is a recognized expert in social media and online behavior. She has been a Professor of the College of Information Studies at the University of Maryland since 2007, where her course curriculum and research have focused on social media and the web. Dr. Golbeck has also been teaching at various universities on issues related to computer science, the web, and social media for 26 years. She was recently awarded a grant from the National Science Foundation for "Small: Assessing Radicalization and Deradicalization Online" (2023-2026). Dr. Golbeck has been published in refereed articles and conferences, with over 100 of them relating to social media and the web. She has further engaged in multiple speaking events, all on topics including social media and online behavior. Her 52 page *curriculum vitae* is attached to the government's motion as Exhibit A.

The government asserts three challenges related to Dr. Golbeck's qualifications.

First, the government argues that Dr. Golbeck is not qualified in making legal conclusions about the criminality of speech and what constitutes solicitation of a crime of violence. *See, e.g.*, Gov. Mot. at 8-9. Dr. Golbeck's proposed testimony does not include statements about whether speech is criminal or satisfies the legal definition of solicitation.

Second, the government argues that nothing in her *curriculum vitae* sheds any light as to her expertise in online violent speech. *See* Gov. Mot. at 8. Dr. Golbeck's *curriculum vitae* includes two recent examples of expertise in online violence (the latter that was expressly noted in defense's expert notice): her 2023 to 2024 award for "The Incel Phenomenon: A Study of Radicalization and Violence" by the University of Maryland New Directions Catalyst Fund; and her May 2025 refereed paper – Cross-platform violence detention on social media: A dataset and analysis – at a highly selective and reputable conference. Dr. Golbeck's May 2025 peer-reviewed paper includes a study where she and her colleagues studied 30,000 posts on various social media platforms and categorized those posts that were violent.

Additionally, although the government argues that the Rule 16 notice provides insufficient information to cross-examine Dr. Goldbeck, the Rule 16 notice requirement requires exactly that – a notice. The federal rule does not require a complete draft of the expected trial testimony. As a well-recognized expert in her field,

3

Dr. Golbeck's research and the bases for her opinions are spelled out in her various publications and research.

Third, the government points to civil case where Judge Ellis granted the defense's motion to exclude portions of Dr. Golbeck's testimony in a civil patent infringement matter 12 years ago. *See* 1:13-cv-00158, ECF No. 352 (excluding expert testimony as to "privacy level information," whether prior art references are properly combinable; and Facebook's commercial success). Portions of Dr. Golbeck's testimony excluded in a civil patent infringement case more than a decade ago has no bearing in this case – which involves testimony related to online behavior on social media platforms and the type and context in which online statements on such platforms are made.

Accordingly, Dr. Golbeck is extremely well qualified based upon her background and experience to provide testimony regarding the context of online communications and statements on online platforms. To the extent that the government has questions regarding her expertise, the Court can certainly allow the government to voir dire the witness regarding her qualifications.

## II. Dr. Golbeck's Proposed Testimony Would Educate the Jury Regarding the Central Issue in the Trial: the Online Context in Which the Charged Statement Was Made.

The superseding indictment charges Mr. Stinson with soliciting the assassination of President Trump in violation of 18 U.S.C. § 373. That statute requires that the defendant act "under circumstances strongly corroborative of ... intent." 18 U.S.C. § 373(a). As such, courts require the government "to present

4

evidence of facts accompanying the solicitation strongly confirming that the defendant actually intended the solicited person to engage in the solicited violent crime." *United States v. Walthall*, 130 F.4th 791, 798 (9th Cir. 2025) (citation omitted).

The context in which a defendant makes the alleged solicitation is central to the jury's determination of whether circumstances "strongly corroborative of … intent" exist. For example, shouting at a basketball game that the referee should be killed, or drunkenly asking a bartender to kill a spouse, both imply contexts that are inconsistent with a serious intention to solicit another to commit a crime of violence. S. Rep. No. 97–307, 97th Cong. 1st Sess. 182-83 (1981).

The determination of whether speech is protected by the First Amendment also often depends upon the context in which a statement is made. For example, although the First Amendment does not protect "true threats," the "'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow[.]" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023); *see also Texas v. Johnson*, 491 U.S. 397, 405 (1989) ("in characterizing [] action [taken with respect to the U.S. flag] for First Amendment purposes, we have considered the context in which it occurred").

Dr. Golbeck's proposed testimony is designed to educate the jury regarding the online context in which Mr. Stinson made the charged statement on Bluesky. Specifically, as set forth in the expert disclosure notice, she would testify regarding the general structure and nature of social media platforms, and specifically

5

microblogging platforms. This first category is not subject to the government's motion. Second, she would testify regarding the nature of political discussions that commonly occur on these types of platforms and that oftentimes they range from being distasteful, to harassing, to slurs. Third, she would testify that political discussions on these platforms can escalate from discussing violence or violent expressions of political disagreements into actual threats.

Moreover, she would testify "that posts that discuss, encourage, and celebrate the death of government officials are common and are, in fact, widespread and pervasive on microblogging platforms." Examples of such posts are included in the defense exhibits and were also included in Dr. Golbeck's declaration in support of the motion to dismiss on grounds of selective prosecution. And fourth, she would testify that Mr. Stinson's charged post and surrounding posts are relatively mild when looking at the full spectrum of discussions around violence and political officials on microblogging platforms.

Similar testimony is commonly admitted in cases that center on online communications. *See, e.g., United States v. Bradbury*, 2015 WL 4627018, at *2 (N.D. Ind. July 31, 2015) (denying government's motion to exclude expert testimony on general behavioral patterns of Facebook users); *United States v. Valle*, 2013 WL 440687, at *4 (S.D.N.Y. Feb. 2, 2013) (denying government's motion to exclude expert testimony that defendant's "internet communications are consistent with sadistic online role play and the exchange of erotic fantasies").

6

While the government claims that testimony about threatening communications is irrelevant because solicitations can occur without threats, *see* Gov. Mot. (Dkt. No. 93) at 5-7, it ignores that § 373 requires proof of solicitation of a crime of violence. Indeed, the decision cited by the government for this proposition, *United States v. White*, 698 F.3d 1005 (7th Cir. 2012), did not merely involve the posting of personal identifying information about a target of a charged solicitation offense. In *White*, the defendant also posted, in addition to a juror's personal identifying information, the statement that "[e]veryone associated with the Matt Hale trial has deserved assassination for a long time[.]" *Id.* at 1008. He also "advocated that violence be perpetrated on the 'enemies' of white supremacy and praised attacks on such enemies[,]" posted that those involved in a white supremacist's conviction "may be the next targets of an 'unknown nationalist assassin[,]'" and "call[ed] for violence against 'anti-racists.'" *United States v. White*, 610 F.3d 956, 957 (7th Cir. 2010). The claim that *White* did not involve "rhetoric that is violent in nature whatsoever" simply ignores the facts of the case.

The proposed testimony is directly relevant to assisting the jury in understanding the context of microblogging platforms, the spectrum of political discussions that occur on such platforms, and where Mr. Stinson's posts fall within the spectrum of online posts about political figures. This information will assist the jury in making a decision as to whether the circumstances surrounding his charged conduct strongly corroborate an intent to solicit someone to assassinate the President. In other words, the jury's understanding of the online context in which Mr. Stinson's

7

charged statement – "Take the shot. We'll deal with the fallout" – was made is directly relevant to both the "strongly corroborative circumstances" element and the application of the First Amendment. Accordingly, the Court should reject the government's argument that Dr. Golbeck's proposed testimony is irrelevant to any material fact at issue.

### III. Dr. Golbeck's Proposed Testimony Solely Concerns the Context and Nature of Mr. Stinson's Online Statements, And Does Not Purport to Provide Testimony About Mr. Stinson's Intent.

The government's motion mischaracterizes Dr. Golbeck's proposed testimony as speculation regarding Mr. Stinson's intent. *See* Gov. Mot. at 11-12. Nothing in the expert disclosure purports to provide an opinion regarding Mr. Stinson's intentions. *Id.* at 13-14.[1] On the contrary, Dr. Golbeck's proposed testimony relates solely to her expertise in evaluating online communications and placing Mr. Stinson's statements in the context of such online speech.

Moreover, the government's complaint that Dr. Golbeck is biased against President Trump, *see* Gov. Mot. at 10, is not a basis for excluding her testimony. "Bias is the 'quintessentially appropriate topic for cross examination.'" *Abernathy v. E.*

---

[1] Experts are routinely permitted to provide testimony that helps a jury to understand "the context surrounding the language [at issue] in determining the appropriate interpretation." *United States v. Smith*, 919 F.3d 825, 837 (4th Cir. 2019). Nonetheless, the government argues that Dr. Golbeck should not be permitted to "interpret[] the facts of the case" or "interpret[] language that need[s] no interpretation." Gov't Mot. (Dkt 93) at 13 (citing *United States v. Rodriguez*, 125 F. Supp. 3d 1216 (D.N.M. 2015); *Youngberg v. McKeough,* 534 F. App'x. 471 (6th Cir. 2013); *United States v. Kilpatrick*, 798 F.3d 365 (6th Cir. 2015); *United States v. McDonnell*, 792 F.3d 478 (4th Cir. 2015); *United States v. Wilson*, 484 F.3d 267 (4th Cir. 2007)). Because online speech is distinct from other types of speech, however, expert testimony in this area is admissible.

*Illinois R.R. Co.*, 940 F.3d 982, 992 (7th Cir. 2019). As such, to the extent the government seeks to raise the issue of Dr. Golbeck's supposed bias against President Trump, "it is permitted to do so on cross-examination." *See Venus v. Seville Food, LLC*, 2017 WL 2364192, at *17 (D.N.J. May 31, 2017) (declining to exclude expert testimony based on evidence of bias and instructing defendant that issue can be addressed through cross examination).

In sum, the government is fully able to cross-examine Dr. Golbeck as to the extent of her understanding of similar online communications, her supposed political bias, and her knowledge about Mr. Stinson's social media posts outside of those alleged in the Superseding Indictment, among other topics.[2] But none of these complaints provides a valid basis to exclude Dr. Golbeck's proposed testimony.

### IV. Dr. Golbeck's Proposed Testimony is Not a Veiled Attempt To Argue for Jury Nullification.

As noted above, Dr. Golbeck's proposed expert testimony is designed to contextualize Mr. Stinson's social media posts. This testimony will assist the jury in understanding whether the circumstances surrounding his charged post strongly corroborate his alleged intent to solicit another to assassinate the President. Although the government argues that the defense seeks to make two "veiled attempts" through Dr. Golbeck's expected expert testimony to argue that Mr. Stinson was improperly selected for prosecution and to invite jury nullification, neither is

---

[2] To be clear, Dr. Golbeck did review the affidavit submitted in support of the criminal complaint – that was actually the first document she reviewed. Counsel has provided a revised expert disclosure to address this fact.

true. Dr. Golbeck's proposed expert testimony is directly relevant to elements of 18 U.S.C. § 373.

## Conclusion.

For these reasons, the Court should deny the Government's Motion to Exclude Testimony from Defense Expert Jennifer Golbeck.

Date: October 23, 2025                    Respectfully submitted,

**PETER ANDREW STINSON**

By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org