IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:25-CR-209 |
| | ) | |
| PETER ANDREW STINSON, | ) | The Honorable Anthony J. Trenga |
| | ) | |
| Defendant. | ) | Trial: October 27, 2025 |

GOVERNMENT'S TRIAL BRIEF

On October 27, 2025, Defendant Peter Andrew Stinson ("the defendant") will appear for a jury trial for one count of solicitation of a crime of violence, in violation of 18 U.S.C. § 373. This case arises from the defendant's repeated postings on Bluesky seeking to solicit or persuade another individual to assassinate President Donald J. Trump in violation of 18 U.S.C. § 1114 after the Inauguration of the President in January 2025. Specifically, the Superseding Indictment charges the defendant with soliciting a crime of violence on February 18, 2025, when he posted: "Take the shot. We'll deal with the fallout." The defendant's intent to solicit an assassination of President Trump on February 18, 2025, is strongly supported by the dozens of other posts he made on Bluesky, especially between January and March 2025, in which he repeatedly expressed his hatred for President Trump, shared information about what kind of tools would be needed to carry out a successful assassination, advised potential assassins on the need to "practice, practice, practice" and to take the opportunity when it presents, identified the exact type of person who would be ideal for the job, and seriously, specifically and repeatedly called for someone to assassinate the President.

1

**SUMMARY OF THE EVIDENCE**

At trial, the bulk of the government's evidence will be the defendant's own statements made on Bluesky soliciting or endeavoring to persuade someone to assassinate President Trump, as well as his statements on Bluesky, Twitter, and Reddit that corroborate his intent that another person assassinate the President.

First, the evidence will show that in July 2024, after the attempted assassination of President Trump in Butler, Pennsylvania, the defendant immediately began posting every few minutes about how the shooter was an "asshole" because he failed to "complete the mission", that "execution is critical" and, if anyone else wants to "play in the big leagues" they need to learn "this lesson" and "practice, practice, practice" because this "shit takes skills." The day after the shooting, the defendant advised that "AR style weapons . . . [are] best for near to medium distances and shooting multiple shit quickly. For long distances, a specialized sniper rifle is a better tool choice." Officer Michael Blake will testify that he has received firearms trainings as part of his job and that this advice regarding the right uses of AR style weapons and sniper rifles is accurate.

In responding to the Butler assassination attempt, the evidence will show that the defendant refers to President Trump as "the orange candidate" and says that "as noted before, I'm not a good enough shot." To show the jury that the defendant uses the word "orange" to refer to President Trump, the government will introduce the defendant's prior Twitter posts in which the defendant first states "I refuse to use the asshole's name. He's the orange mf or orange fucktard . . ." and then consistently uses code words like "the orange" and "the orange mf" on Twitter (and later "Krasnov" on Bluesky) in reference to President Trump specifically. For

2

example, one such Twitter post from August 26, 2020, reads: "Only racists and fascists will cast their vote for the orange mf." Another from December 23, 2020, reads: "Still time for the orange to pardon hundreds of people. . . still time for somebody to shoot his fat ass. 28 days until sanity in the White House." These Twitter posts, specifically the references to voting, "pardons" and the "White House," will show that the defendant undoubtedly uses the word "orange" to refer to President Trump. Additionally, to explain the defendant's reference on Bluesky: "As noted before, I'm not a good enough shot[,]" the government will introduce a few of the numerous Twitter posts in which the defendant states he wishes he could kill President Trump but unfortunately isn't a good enough shot himself to provide the jury with that context.

The evidence will also show that the defendant, through his Google searches, was aware of the second assassination attempt on President Trump in Florida in September 2015 and, in response, posted: "Third times the charm." Additionally, the evidence will show that towards the end of the year in December, the defendant repeatedly posts his reflections on the prior Butler assassination attempts by posting a series of posts about his lessons learned that year. One such lesson being that "good planning, the correct tools, and a clear aim can make the difference. This is a important lesson to learn as we face the next 4 years." He also advises on his reflections: "2 things I learned this year: The AK is great for killing people, but if your target is a specific target at distance, it's not the best tool. Don't write shit down. Learn to plan in your head, not on paper. & be sure to destroy all evidence before."

The evidence will also demonstrate that the defendant's deep-rooted hatred for President Trump stems from his anti-fascist beliefs, his beliefs that President Trump is a fascist, and his commitment to defeating fascism. To explain what he believes is needed to defeat fascism, the

defendant repeatedly states: "Violence is inherently necessary"; "Fascism has never been toppled by nonviolence"; and "Fascism always dies a violent death."

The evidence will then focus on the escalation of the defendant's statements post-Inauguration, from January to March 2025. Specifically, the evidence will show that starting January 28, the defendant became obsessed with the idea of killing President Trump; he was posting almost daily, at times multiple times a day, about how President Trump needs to die or be "Luigied"—which Officer Blake will testify based on his knowledge and experience is a term used to mean assassination of a person in power— that he wishes he could kill President Trump himself ("I would twist the knife after sliding it into his fatty flesh" and "I would pull the trigger for the good of the nation"), brainstorming out loud about the different ways to achieve President Trump's death (e.g., poison, crowd funding a hit man, stating he "needs a plan" and inviting someone to let him know if they've "done this sort of work before"), and demanding that somebody needs to step up and take care of it ("Somebody needs to do it. Somebody with the skills to do it right. Somebody with the experience. Somebody with the right tools. Somebody needs to get it done.") Around this same time, in February 2025, he also shares specific techniques when pulling a trigger, which Officer Blake will testify constitute accurate information on how to properly shoot a firearm ("It's all in the breathing and a gentle touch of the finger"; "Breathe. And hold. And pull back with steady pressure"; and, "The pull back has to be smooth, not jumpy. And breathing needs to be coordinated with the pull.")

The evidence will show that during this time frame, in the month and a half following inauguration, the defendant says the words "take the shot" on six different occasions (January 29th, February 7th, 10th, 11th, 14th, and 18th), with the final demand to "Take the shot" falling on

4

February 18, 2025, in the post charged in the Superseding Indictment. That same day, the defendant makes two additional posts demonstrating that when he was instructing someone to "Take the shot" he is talking about the President, because he states first: "Politically the only solution is impeachment. Realistically its violence." Second: "The only political solution is impeachment. The only practical solution is violence."

Finally, the evidence will also show that the defendant went even further by explicitly describing and identifying the type of person he believes can and should carry out what he's previously referred to as "the mission," and appealing to that person by saying he would do it if he were a "true patriot." On February 23, 2025, he posts: "There is at least one person who, right now, could help move things along. He, and it is a he, specifically a white cis male, has means and opportunity. He could do it. He would if he were a true patriot. Will. That's what the guy needs. A will." That same day he also posts: "Just remember. Someone, right now, has means and opportunity. They just need the will to follow through." A prior Twitter post from April 6, 2020, reinforces Stinson's belief that a "true patriot" would assassinate President Trump because he, himself, previously stated that he wishes he could do it "to take the fall to save America." The evidence from Bluesky and prior Twitter posts will demonstrate that the defendant was going to these lengths to solicit or endeavor to persuade someone to carry out this task because he believed he couldn't do it himself.

Officer Blake's testimony will also inform the jury about social media platforms Bluesky, Twitter and Reddit (which also has a few of the defendant's posts reiterating his wish that someone would kill President Trump). The evidence will also show that before and after the charged post, the defendant had between approximately 500 and 1.1k followers on his Bluesky

5

account, which was publicly accessible. The evidence will show that, although the defendant had the opportunity to delete these posts, he didn't do so and, by June 3, 2025, he had over 3,000 followers on his Bluesky account. The evidence will also show that, while making these statements, the defendant was clearly aware of the fact that others were just as angry at President Trump as he was and that there were many people out there thinking of killing President Trump. This will be demonstrated by his posts in response to, and searches regarding, the two failed assassination attempts as well as his post on February 1, 2025, which stated: "The secret service must be going bonkers. The number of people who have thought about killing the president has reached 86 million people. That's 1 out of 4 americans who have thought killing the orange turd would be more than a good idea."

## LEGAL ANALYSIS

### I. Elements of the Charged Offense and the Government's Anticipated Evidence.

The Superseding Indictment in this case charges the defendant with one count of solicitation of a crime of violence (namely, murder of officers and employees of the United States, in violation of 18 U.S.C. § 1114), in violation of 18 U.S.C. § 373. Section 373(a) states, in relevant part:

> (a)　　Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned . . . .

The Fourth Circuit has described the elements of a criminal solicitation as: (1) a solicitation, command, or similar entreaty; (2) to commit a federal felony; (3) involving the actual or inchoate use of force against person or property; (4) made under such conditions or

within such context that the overture may reasonably be regarded as sincere. *See United States v. Barefoot*, 754 F. 3d 226, 237 (4th Cir. 2014).

### A. A solicitation, command or similar entreaty

The government anticipates proving at trial that the defendant's post "Take the shot. We'll deal with the fallout" was a solicitation, a command, an inducement or an endeavor to persuade another to commit a crime of violence that meets the first element of the charged offense. Under the language of the statute, the phrase "otherwise endeavors to persuade" means "any situation where a person seriously seeks to persuade another." *United States v. Rahman*, 189 F.3d 88, 125 (2d Cir. 1999). However, "a specific person-to-person request is not required" for a criminal solicitation conviction. *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010) (citing *United States v. Rahman*, 189 F.3d 88, 117–18 (2d Cir.1999) ("[t]hough the government did not present a specific 'solicitee,' it was unnecessary to do so given the very nature of the solicitation—an electronic broadcast which, a reasonable jury could conclude, was specifically designed to reach as many white supremacist readers as possible so that someone could kill or harm Juror A. 18 U.S.C. § 373 requires proof of intent 'that another person' commit the felony, and White's desire for any reader to respond to his call satisfies this requirement.").

At trial, the government anticipates proving that the defendant's post "Take the shot. We'll deal with the fallout" meets the first element because it constituted a serious attempt to solicit, command or endeavor to persuade another person to assassinate the President. The government will do this by showing 1) that this statement came after 5 other instances in which the defendant repeatedly stated "Take the shot" or "You are clear to engage if you have the shot" or "Take the shot when the opportunity represents" or "Somebody. Please. Take the fucking

7

shot" and on the same day that he said, twice, that the only political solution is impeachment but the only realistic or practical solution is violence; 2) showing that these statements refer to taking the shot to assassinate President Trump given the surrounding statements made in February 2025—within weeks after President Trump's inauguration—and alongside other statements repeatedly saying that President Trump needs to be die or be "luigied."

### B. A federal felony involving the actual or inchoate use of force

The predicate crime of violence that the defendant was charged with soliciting here is 18 U.S.C. §1114(a)(1) – Murder of Officers and Employees of the United States. The statute reads as follows:

> (a)   In General.—Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished—(1) in the case of murder, as provided under section 1111 . . .

Section 1114(a)(1) proscribes pre-meditated murder against any officer or employee of the United States, which the Fourth Circuit has recognized as a crime of violence. *See United States v. McDaniel*, 85 F. 4th 176, 188 (4th Cir. 2023) ("it is clear that a § 111(b) violation in 1993 constituted a crime of violence under the categorical approach); *United States v. Williams*, 834 F. App'x 6 (4th Cir. 2021) ("it is settled in this circuit that murder qualifies as a crime of violence under the force clause because it requires such a use of force."); *United States v. Mathis*, 932 F. 3d 242, 265 (4th Cir. 2019) (Murder "requires the use of force capable of causing physical pain or injury to another person" irrespective whether that force is exerted directly or indirectly by a defendant . . . Therefore, we conclude that the crime of first-degree murder under

8

Virginia law qualifies categorically as a crime of violence under the force clause[.]") Accordingly, violation of Section 1114(a)(1) qualifies as a federal felony involving the actual or inchoate use of force against a person.

Further, at the time of the defendant's charged solicitation, on February 18, 2025, the President of the United States, Donald J. Trump was an "officer or employee of the United States," and "engaged in or on account of the performance of official duties" under Section 1114(a). *See Carroll v. Trump*, 49 F.4th 759, 770 (2d Cir. 2022), certified question answered, 292 A. 3d 220 (D.C. 2023) (agreeing with President Trump's argument that "the President is a government employee in the most basic sense of the term: He renders service to his employer, the United States government, in exchange for a salary and other job-related benefits" and holding that "the President is an employee of the government under the Westfall Act.")

At trial, the government anticipates asking the Court to take judicial notice of the fact that the President is an employee or officer of the United States who was engaged in his official duties after the evidence is presented that President Trump was inaugurated as President on January 20, 2025.

### C. Conditions or circumstances strongly corroborating intent

The evidence at trial will demonstrate beyond a reasonable doubt that the defendant's solicitations, commands, and endeavors to persuade another to assassinate the President of the United States were made under "under such conditions or within such context that the overture may reasonably be regarded as sincere." *See United States v. Barefoot*, 754 F. 3d 226, 237 (4th Cir. 2014). To put it differently, the evidence will demonstrate that his solicitations were made under circumstances strongly corroborative of his intent that another person assassinate the

9

President. 18 U.S.C. §373. Congress has provided a non-exhaustive list of examples of strongly corroborative circumstances that are highly probative of intent, two of which are relevant in this case: first, the fact that the defendant repeatedly solicited the commission of the offense; and second, that the defendant acquired weapons, tools or information suited for use by the person solicited in the commission of the offense

The evidence at trial will prove that the defendant's own statements on Bluesky, and the timing and context of those statements, strongly corroborate his intent that another person assassinate the President. Specifically, his statements will show that he considered killing the President and toppling the fascist regime through violence is "inherently necessary" and the only practical and realistic solution. He saw it as a "mission" that a "true patriot" would carry out. The defendant himself has said on Twitter and on Bluesky that he would "take the fall to save America" and "He who kills the President to save the country has broken no laws."

The defendant's statements also prove that he was often sharing information about the right tools that would be needed to successfully carry out an assassination—a sniper rifle as opposed to an AK or an AR style weapon—and how to best prepare for the assassination through a lot of practice because it takes "skills" and "talent" instead of "luck", planning "in your head, not on paper", and "destroy[ing] all evidence beforehand. He also gave very specific instructions about how to coordinate breathing when pulling the trigger, that the pull back of the trigger has to be smooth and not jumpy, and that there must be an application of "steady pressure." Officer Blake will testify that, based on his own specialized firearms training, all of this information is accurate regarding firearms and proper use of firearms.

  Finally, the evidence will show that after Inauguration, the defendant clearly demonstrated how serious he was in wanting someone to kill the President by the timing and frequency of his posts, the apparent obsession he had developed with achieving the President's death, calling for someone to just take care of it, and even expressly using the word "please" when saying begging someone to take the shot. After saying, day in and day out, over and over again, different variations of his beliefs that violence is necessary and the only practical solution, someone needs to take care of it, brainstorming the different ways to kill the president, even inviting someone to respond to him when he says "Need a plan. Anyone done this sort of work before?" and suggesting that he and one of his nearly 1,000 followers could crowd fund or create a go fund me for a hit man (which he also previously did on Twitter by claiming he would be willing to pitch in $100 for a contract). All of these statements were made after he acknowledged that "1 in 4 americans" are thinking of killing the President and that this is a President who has already been the victim of two attempted assassination attempts. Further, the evidence will demonstrate that these posts were never deleted by the defendant, and, in the context of his prior Twitter posts saying the exact same things, cannot constitute "accidents", "mistakes", momentary lapses in judgment or simply examples of spontaneous venting.

  Altogether, the evidence will demonstrate, beyond a reasonable doubt, that the defendant was actively trying to do whatever he could, through his social media platform, to solicit, command, induce or persuade someone to successfully assassinate the President of the United States.

**CONCLUSION**

Based on the applicable law and the facts established by the evidence, the United States submits that the evidence will establish, beyond a reasonable doubt, the defendant's guilt on the charged offense.

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date: October 24, 2025

By:   /s/
Sehar F. Sabir
NY Bar #: 5437612
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office: (703) 299-3700
Fax: (703) 299-3980
Email: sehar.sabir@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2025, I filed the foregoing with the Clerk of Court and emailed an electronic copy to counsel of record.

By: _____/s/_____
Sehar Sabir
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office: (703) 299-3700
Fax: (703) 299-3980
Email: sehar.sabir@usdoj.gov